# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA



RECEIVED

FEB 0 2 2026

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

DUSTIN THOMAS HOUSE DARDEN,

Plaintiff,

v.

Case No 3:26-cv-_____.

SUZANNE LAFRANCE Mayor, in her individual and official capacities;
CHRISTOPHER CONSTANT Assembly chair , in his individual and official
capacities; EVA GARDNER, in her individual and official capacities; SEAN CASE,
in his individual and official capacities; ANNA BRAWLEY, in her individual and
official capacities; DANIEL VOLLAND, in his individual and official capacities;
JARED GOECKER, in his individual and official capacities; SCOTT MYERS, in his
individual and official capacities; ERIN BALDWIN DAY, in her individual and
official capacities; FELIX RIVERA, in his individual and official capacities;
GEORGE MARTINEZ, in his individual and official capacities; YARROW
SILVERS, in his individual and official capacities; ZAC JOHNSON, in his
individual and official capacities; KEITH MCCORMICK, in his individual and
official capacities; KAMERON PEREZ-VERDIA, in his individual and official
capacities; ALLIED UNIVERSAL SECURITY SERVICES; JOHN DOE 1 (Armed
Allied Security Guard); JOHN DOE 2 (Allied Security Guard); JANE DOE 1 (Allied
Security Guard); M. WEINRICK, APD Officer, in his individual and official
capacities; C.B. WALAND, APD Officer, in his individual and official capacities;
CARPENTER, APD Officer, in his individual and official capacities; AMBURN,
APD Officer, in his individual and official capacities; D. GUTIERREZ, APD Officer,
in his individual and official capacities; RIVERA, APD Officer, in his individual and
official capacities, MUNICIPALITY OF ANCHORAGE,

Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES 42 U.S.C. § 1983 First Amendment Fourth Amendment Fourteenth Amendment

### JURY TRIAL DEMANDED

1

# INTRODUCTION

1.      This civil rights action arises from Defendants' coordinated violation of my clearly established First and Fourth Amendment rights on January 13, 2026, when I was forcibly removed from the Anchorage Assembly chambers during public testimony solely for invoking my constitutional right to petition the government for redress of grievances.

2.      On that evening, I exercised my fundamental right to address my elected representatives during the designated public comment period—a quintessential forum for citizen speech recognized by the United States Supreme Court. While speaking on streetlight ordinances before the Assembly, I was arbitrarily interrupted mid sentence by Assembly Member Scott Myers, who called a spurious point of order claiming my testimony about LED lights' health effects had "nothing to do with" the streetlight proposal under consideration.

3.      When I respectfully responded to this arbitrary interruption by invoking my First Amendment right to petition the government for redress of grievances, Assembly Chair Christopher Constant immediately retaliated by summoning armed security guards and ordering my removal.

4.      Three Allied Universal security guards—including one armed guard carrying a handgun—approached me in the Assembly chambers. When I requested that the armed guard produce his Alaska security guard license as mandated by Alaska Statute AS 18.65.460, the guard refused.

5.      Anchorage Police Department officers arrived and, acting at the direction of the Assembly Chair, ordered me to leave. I immediately complied, though I had violated no law, no time limit, no procedural rule, and had done nothing more than exercise my constitutional rights.

6.      Municipal Attorney Eva Gardner—who had personally witnessed the entire incident—delivered a handwritten trespass notice drafted by Assembly Chair Constant purporting to ban me from future Assembly meetings.

7.      On January 27, 2026, APD Chief Sean Case ratified and extended this unconstitutional prior restraint, directing that I was trespassed from the January 27 Assembly meeting despite my written notice to Chief Case that the trespass order violated clearly established constitutional law.

8.     The consequences extend far beyond my exclusion from two meetings. I was excluded from the January 27, 2026 Assembly meeting where critical ballot propositions for the April 7, 2026 municipal election were considered—including a special education tax levy, multiple bond measures totaling over $57 million, and a charter amendment. As a declared candidate for Anchorage School Board Seat D and the United States Senate, my exclusion directly interfered with my campaigns and deprived me of the opportunity to participate in the democratic process.

9.     This lawsuit seeks to vindicate fundamental constitutional rights, establish binding precedent protecting citizen speech at public meetings throughout Alaska, hold government officials accountable for viewpoint discrimination, and ensure that no future Alaskan citizen suffers the indignity and harm of being forcibly removed from their own government for invoking the First Amendment.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3)-(4) (civil rights jurisdiction). I bring claims under 42 U.S.C. § 1983 for violations of rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2.     This Court has supplemental jurisdiction over my state law claims under 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

3.     This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 and injunctive relief under Fed. R. Civ. P. 65.

4.     Venue is proper in the District of Alaska under 28 U.S.C. § 1391(b) because all Defendants reside in this district and all events giving rise to this action occurred in Anchorage, Alaska, within this judicial district.

## PARTIES

Plaintiff

1.     I am Dustin Thomas House  Darden, a United States citizen and resident of Anchorage, Alaska. I am a constitutionally-minded advocate for civil rights who operates LawHelpAK.com, a platform dedicated to educating Alaskans about their constitutional rights and holding government accountable to the rule of law. I identify as a citizen of heaven, as *Philippians 3:20* reminds us that our

conversation is in heaven, and *Ephesians 2:6* highlights that we are seated together in heavenly places in Christ Jesus.

2.      I am a professing Christian whose faith in Jesus Christ informs my civic engagement and my commitment to constitutional principles. My religious worldview shapes my perspective on matters of public policy, including health and safety issues such as LED lighting technology. The First Amendment protects my right to express these religiously-informed views in public forums.

3.      I am a declared candidate for the United States Senate from Alaska (FEC ID: S6AK00268,) and a declared candidate for the Anchorage School Board, Seat D. These candidacies give me enhanced reasons to participate in public meetings addressing education funding, municipal governance, and ballot measures.

4.      I am experienced in federal and State litigation, having successfully navigated cases from the Alaska District Court through the Ninth Circuit Court of Appeals to the United States Supreme Court, and have won judgment in my favor against a security company for negligence in Alaska Superior Court.

Defendants

Municipality of Anchorage

1.      Defendant Municipality of Anchorage is a home rule municipality organized under the laws of the State of Alaska. It operates the Anchorage Assembly, employs the Anchorage Police Department, and contracts with private security firms to provide security at municipal facilities.

2.      The Municipality is sued pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), for maintaining official policies, customs, and practices that caused the constitutional violations alleged herein, and for deliberate indifference to the constitutional rights of citizens attending Assembly meetings.

Individual Defendants - Municipal Officials

1.      Defendant Suzanne LaFrance is and was at all relevant times the Mayor of the Municipality of Anchorage, serving in both her official and individual capacities. Mayor LaFrance personally witnessed the January 13, 2026 incident, has final authority over the Anchorage Police Department and Municipal Attorney's Office, and ratified the constitutional violations by allowing APD Chief Case to enforce the unconstitutional trespass order.

2. Defendant Christopher Constant is and was at all relevant times the Chair of the Anchorage Municipal Assembly, serving in both his official and individual capacities. As Assembly Chair, Constant presides over Assembly meetings, recognizes speakers during public testimony, enforces Assembly Rules, and has authority to summon security personnel. On January 13, 2026, Constant ordered my removal solely because I invoked my First Amendment rights and subsequently drafted by hand the trespass notice excluding me from " 1 meeting".

3. Defendant Eva Gardner is and was at all relevant times the Municipal Attorney for the Municipality of Anchorage, serving in both her official and individual capacities. Gardner personally witnessed the January 13, 2026 incident and knew I had been silenced solely for exercising protected speech. Despite this knowledge, she personally delivered to me the handwritten trespass notice drafted by Chair Constant.

4. Defendant Sean Case is and was at all relevant times the Chief of Police of the Anchorage Police Department, serving in both his official and individual capacities. On January 27, 2026, Chief Case—after receiving written notice from me that the trespass order violated clearly established constitutional law—ratified and extended the unconstitutional prior restraint.

5. Defendant Scott Myers is and was at all relevant times a member of the Anchorage Assembly, serving in both his official and individual capacities. Myers called a pretextual "point of order" during my testimony claiming my discussion of LED lights' health effects was irrelevant to the streetlight ordinance under consideration. This pretextual interruption provided the basis for Chair Constant's retaliatory removal.

6. Defendants Anna Brawley, Daniel Volland, Jared Goecker, Erin Baldwin Day, Felix Rivera, George Martinez, Yarrow Silvers, Zac Johnson, Keith McCormick, and Kameron Perez-Verdia are and were at all relevant times members of the Anchorage Assembly, serving in both their official and individual capacities. Each Assembly member took an oath to uphold the United States Constitution and Alaska Constitution. Each was present during my removal on January 13, 2026 and had the authority to make a motion to stop the violation of my constitutional rights but chose not to do so, thereby ratifying Chair Constant's unconstitutional conduct.

Individual Defendants - Law Enforcement

1. Defendant M. Weinrick (Badge No. 63323) is and was at all relevant times an officer with the Anchorage Police Department, sued in his individual and official capacities. On January 13, 2026, Officer Weinrick responded to the

Assembly chambers, refused to address my complaint that an armed security guard had violated AS 18.65.460 by refusing to show his security license, and issued me a "lawful order" to leave despite knowing I had committed no violation.

2.      Defendant C.B. Waland (Badge No. 63378) is and was at all relevant times an officer with the Anchorage Police Department, sued in his individual and official capacities. Officer Waland demonstrated ignorance of constitutional principles governing public access to public forums and participated in my unlawful removal.

3.      Defendant Carpenter (Badge No. 627?3) is and was at all relevant times an officer with the Anchorage Police Department, sued in his individual and official capacities. Officer Carpenter has a history of threatening me with arrest when I attempted to file assault charges against security guards for prior violations. Officer Carpenter participated in enforcing the unlawful trespass order and interrogated me after I invoked my 5th Amendment right.

4.      Defendant Amburn (Badge No. 67246) is and was at all relevant times an officer with the Anchorage Police Department, sued in his individual and official capacities. Officer Amburn participated in enforcing the unlawful trespass order and authored a report extending the trespass through January 31, 2026.

5.      Defendant D. Gutierrez (Badge No. 657979) is and was at all relevant times an officer with the Anchorage Police Department, sued in his individual and official capacities. On January 13, 2026, Officer Gutierrez told me I was "trespassed from this meeting and the next one," despite no legal authority for such an order.

6.      Defendant Rivera (Badge No. 61037) is and was at all relevant times an officer with the Anchorage Police Department, sued in his individual and official capacities. On January 27, 2026, Officer Rivera approached me outside the Assembly chambers and later informed me that I was trespassed from that evening's meeting, but refused to identify who gave him this information.

Corporate Defendant - Security Company

1.      Defendant Allied Universal Security Services is a private security company that contracts with the Municipality of Anchorage to provide security services at municipal facilities, including the Anchorage Assembly chambers. Allied Universal is sued as a corporate entity for the actions of its employees who, acting under color of state law, deprived me of constitutional rights.

6

2.      Allied Universal's employees wore municipal badges, exercised governmental authority, performed traditional government functions (law enforcement at a public facility), and acted pursuant to direct orders from government officials (Assembly Chair Constant). Under these circumstances, Allied Universal and its employees were state actors subject to constitutional constraints.

John and Jane Doe Defendants - Security Guards

1.      Defendant John Doe 1 is an Allied Universal security guard, identity currently unknown to me, sued in his individual capacity. John Doe 1 is described as a white male, approximately 5'9" tall, average to slightly overweight build, bald head with orange/red facial hair. On January 13, 2026, John Doe 1 was armed with a handgun in a hip holster, wore an Allied Universal uniform and a municipal badge, and approached me under color of governmental authority after being summoned by Assembly Chair Constant. When I requested that John Doe 1 produce his Alaska security guard license as required by AS 18.65.460, John Doe 1 refused.

2.      Defendant John Doe 2 is an Allied Universal security guard, identity currently unknown to me, sued in his individual capacity. John Doe 2 is described as a black male. When I requested to see his security guard license on January 13, 2026, John Doe 2 showed it upside down and too quickly for me to read the required information, in violation of AS 18.65.460.

3.      Defendant Jane Doe 1 is an Allied Universal security guard, identity currently unknown to me, sued in her individual capacity. Jane Doe 1 is described as a petite female with dark hair who appeared to be Alaska Native. Jane Doe 1 failed to produce her security guard license upon my request on January 13, 2026, in violation of AS 18.65.460.

4.      I have requested from Allied Universal and the Municipality the identities of these three security guards but have not yet received responsive information. I will amend this Complaint to substitute true names for John Doe 1, John Doe 2, and Jane Doe 1 upon obtaining their identities through discovery.

## FACTUAL ALLEGATIONS

Background: My Constitutional Advocacy

1.      I am a committed advocate for constitutional rights and government accountability. I regularly attend Anchorage Assembly meetings to exercise my right to petition the government, address matters of public concern, and hold elected officials accountable to the Constitution and the rule of law.

7

2.     My civic engagement is motivated by my Christian faith and my conviction that citizens have both a right and a duty to participate in self-governance. I view my attendance at public meetings as an exercise of constitutional advocacy—speaking truth to power and defending the rights of all citizens.

3.     I operate LawHelpAK.com, a website dedicated to educating Alaskans about their constitutional rights, sharing information about government accountability, and encouraging citizen participation.

4.     I am a declared candidate for the United States Senate from Alaska (FEC Candidate ID: S6AK00268). I am also a declared candidate for the Anchorage School Board, Seat D. These candidacies give me enhanced reasons to attend Assembly meetings, particularly meetings addressing education funding, municipal bond measures, tax levies, and other matters directly relevant to the positions I seek.

The January 13, 2026 Assembly Meeting

The Setting: A Quintessential Public Forum

1.     On January 13, 2026, the Anchorage Municipal Assembly convened its regular meeting at the Loussac Library in Anchorage, Alaska. The meeting was held in the Assembly chambers, a room specifically designated and opened for public attendance and participation.

2.     The meeting was conducted pursuant to the Alaska Open Meetings Act, AS 44.62.310-312, which requires that meetings of public bodies be open to the public. The Assembly chambers during the public testimony period constitute a "designated public forum" under First Amendment jurisprudence.

3. I was trained in the use of the English language at ASDK-12 graduating from East Anchorage high school as a life long Anchorage Alaskan resident my speech was clearly audible and did not require special accommodations to speak, in addition to my advanced speaking abilities I was instilled with a reverence for my allegiance to the constitution of the United States, by saying the Pledge every morning for 13 years in school.

4.     The Assembly agenda for January 13, 2026 included Ordinance No. AO 2025-140, titled: "an ordinance submitting to the qualified voters... a ballot proposition to create a new Street Light Service Area (SLSA)... [for] the Eagle Bluff Estates SLSA." This ordinance concerned LED streetlights.

5.      The Assembly's rules provide for a public testimony period during which members of the public are invited to address the Assembly on agenda items. Each speaker is typically allotted three minutes.

6.      I attended the January 13, 2026 meeting  to address the LED streetlight ordinances, My interest in LED lighting stems from health and safety concerns, informed by my religious and philosophical worldview.

## My Testimony: On-Topic Speech About LED Lights

1.      During the public testimony period, I approached the podium to address the LED streetlight ordinances, after being invited by the assembly chair.

2.      My testimony focused on the health effects of LED lighting, particularly blue light emissions. I stated at 2:47:37 " ..we are here on a 2025–140 the LED lightbulbs wow this is a big one big big big big OK blue lights are bad blue light look it up. Blue light is bad for you and it's these are like laser beams."

3.      This testimony was directly relevant to the agenda items before the Assembly—ordinances establishing street light service areas that would use LED streetlights. The health and safety implications of LED technology are germane to whether such service areas should be created.

4.      My concerns about LED lighting are informed by my religious worldview. At a recent  Oct. 11 2026 Alaskans 4 Personal Freedom conference I attended in person and learned from Dr Ryan Cole said that "blue light in LEDs, Screens ext are poison Blue light will cause neurodegeneration  will cause quicker cognitive decline increases cancer risk increases blood sugar .. The government wants to get rid of all incandescent lightbulbs, which contain the full spectrum of light like the sunshine and now we're surrounded by LEDs that are flickering mostly blue light. It's bad for your eyes. It's bad for the hormones and we wonder why these children are struggling it causes your skin to wrinkle more quickly blue light is poison. How many people have considered blue light as poison before ?"

And As a Christian, I believe God created natural light for human benefit and that artificial blue light from LEDs may be harmful to God's creation. This religious perspective is protected by the First Amendment.

## The Arbitrary Interruption

1.      While I was speaking about the health effects of LED lights during my allotted time, Assembly Member Scott Myers called a "point of order."

2.      Myers claimed that my testimony had nothing to do with the topic.

9

3.     This assertion was pretextual and factually false. I was speaking specifically about LED lights in the context of LED streetlight ordinances. The subject matter was directly on topic.

4.     Assembly Chair Christopher Constant upheld Myers' spurious point of order and instructed me to speak to the matter before the Assembly, despite the fact that I was doing exactly that.

5.     This arbitrary interruption was based on disagreement with my characterization of LED lights' health effects, not on any legitimate procedural ground. It was content-based and viewpoint-based censorship.

My Invocation of First Amendment Rights

1.     Recognizing that I was being arbitrarily censored based on the content and viewpoint of my speech, I respectfully responded that I was granted the First Amendment right to petition the government for redress of grievances, said the pledge of allegiance, and was just about done with the interruptions.

2.     My statement was a direct invocation of my First Amendment rights— an assertion that I had a constitutional right to complete my testimony without arbitrary, content-based interruptions from government officials who disagreed with my viewpoint.

3.     I did not raise my voice, did not use profanity, did not make threats, did not approach anyone, and did not violate any time limit or procedural rule. I simply asserted my constitutional rights.

The Retaliatory Removal

1.     Immediately—within seconds—of my invocation of First Amendment rights, Assembly Chair Constant retaliated.

2.     Chair Constant stated: "All right. Mr. Darden you are out of order. You have been warned I'm asking security to please remove you now."

3.     This statement proves several critical facts:

a. The removal order came immediately after my protected speech, establishing causation under First Amendment retaliation doctrine.

b. Constant did not order removal for violating a time limit, using profanity, being physically disruptive, or violating any content-neutral procedural rule. The sole basis was my response to arbitrary censorship.

c. Constant disagreed with my assertion that I should be allowed to complete my testimony without interruption.

1. The official meeting transcript and video recording preserve Chair Constant's exact words, providing unambiguous proof of the retaliatory nature of my removal. This recording is maintained by the Municipality of Anchorage on its YouTube channel at https://youtube.com/@moameetings  or direct link to January 13 meeting at https://youtu.be/xqEPg-BlWLM?si=_3P_o3H4PfQAjqp0

The Armed Security Guards

1. Pursuant to Chair Constant's order, three Allied Universal security guards approached me at the podium in the Assembly chambers.

2. One guard—John Doe 1—was armed with a handgun in a hip holster visible on his belt.

3. All three guards wore Allied Universal uniforms and also wore municipal badges on their uniforms.

4. The presence of an armed guard approaching a citizen in a public forum during the exercise of protected speech constitutes a show of force and government intimidation designed to chill First Amendment activity.

### The AS 18.65.460 Violations

1. Recognizing that an armed individual was approaching me under color of governmental authority, I requested that the armed guard produce his Alaska security guard license as required by Alaska Statute AS 18.65.460.

2. AS 18.65.460 states: "A security guard or armed security guard shall produce the guard's license or temporary permit immediately upon request."

3. This is a mandatory legal requirement, not discretionary. The Legislature used the word "shall," indicating no exception or discretion.

4. The armed guard—John Doe 1—refused to produce his security license.

5. I made the same request of the other two Allied guards. John Doe 2 showed a license upside down and too quickly for me to read the required information. Jane Doe 1 failed to produce a license at all.

6. The armed guard's refusal to comply with AS 18.65.460 is particularly egregious because he was armed with a deadly weapon, acting under color of

governmental authority, and attempting to remove a citizen from a public forum during the exercise of constitutional rights.

## The Arrival of Anchorage Police

1.      Shortly after the Allied guards approached me, uniformed Anchorage Police officers arrived, including Officer M. Weinrick (Badge No. 63323).

2.      I immediately informed Officer Weinrick that an armed security guard had refused to show his security license in violation of AS 18.65.460. The security guard was standing in arms reach of the officer Weinrick , Weinrick refused to investigate. I said I was scared of that man with the gun to the officer he intentionally willfully ignored my complaint.

3.      Officer Weinrick refused to address this complaint or investigate the violation of Alaska law. The armed guard who had violated AS 18.65.460 was standing within arm's reach of Officer Weinrick, yet Weinrick took no action.

4.      Instead of investigating the Allied guards' violations of Alaska law, Officer Weinrick issued me a "lawful order" to leave the Assembly chambers.

5.      This order was not lawful. I had violated no time limit, used no profanity, made no threats, caused no physical disruption, and violated no content-neutral procedural rule. I had done nothing other than exercise protected First Amendment rights.

6.      The sole basis for the order to leave was that Assembly Chair Constant had ordered my removal because I invoked my constitutional rights.

7.      Officer Weinrick and the other APD officers present knew or should have known that Assembly chambers during public comment are a designated public forum, that citizens cannot be removed from public forums based on the content or viewpoint of their speech, and that Norse v. City of Santa Cruz, 629 F.3d 966 (9th Cir. 2010), decided 16 years ago, clearly established that removing a speaker from public comment based on speech content violates the First Amendment.

8.      Despite this clearly established law, APD officers enforced Chair Constant's unconstitutional order.

9.      I, wishing to avoid  hand cuffing, immediately complied with the officers' unlawful order and left the assembly chamber.

10.     By this point in the meeting, I had been denied the opportunity to complete my testimony on the LED streetlight ordinances.

Officer Gutierrez's Unlawful Extension of the Trespass

1.     Officer D. Gutierrez told me I was "trespassed from this meeting and the next one."

2.     Officer Gutierrez had no legal authority to unilaterally extend a trespass order beyond one meeting.

3.     This statement demonstrates APD's pattern of arbitrary expansion of restrictions on my constitutional rights without legal basis or due process.

### The Handwritten Trespass Notice

1.     Assembly Chair Constant drafted by hand a trespass notice purporting to ban me from one Assembly meeting.

2.     Municipal Attorney Eva Gardner personally delivered this handwritten notice to me.

3.     Gardner had personally witnessed the entire January 13, 2026 incident. She knew I was speaking on an agenda item, had not violated any time limit or procedural rule, had not used profanity or made threats, had not been physically disruptive, and was removed immediately after invoking First Amendment rights.

4.     Despite this knowledge, Gardner—an attorney sworn to uphold the Constitution—delivered the unconstitutional trespass notice, thereby ratifying and facilitating the constitutional violations.

5.     The trespass notice was issued in retaliation for protected First Amendment activity and constitutes an unconstitutional prior restraint on my future speech.

The January 27, 2026 Exclusion and Chief Case's Ratification

1.     The January 27, 2026 Anchorage Assembly meeting addressed critical matters, including:

a. AO 2026-14: A special tax levy proposition for Anchorage School District operational expenses, to appear on the April 7, 2026 ballot.

b. Multiple bond propositions totaling over $57 million for various municipal purposes.

c. AO 2026-15: Amendment to the Home Rule Charter.

1.     As a declared candidate for Anchorage School Board, I had particular interest in testifying on AO 2026-14 (the education tax levy) and making my positions known to voters before the April 7, 2026 election.

2.     On January 26, 2026, I visited the Anchorage Police Department station and spoke with Officers M. Anderson 66500 and Freitag 61258(body cam on). I was informed that according to Officer Amburn's (67246b(body cam on )) report, the trespass had been extended through January 31, 2026. I asked Anderson and Freitag who was upholding this trespass they told me Lieutenant Brian Fuchs told them to just say what was on Amburn's report. APD Trainee Breanna Brandien was a ride along with Anderson and Freitag she thought I was trespassed from any assembly meeting even at city hall, Breanna although not a sworn officer makes a good point that this is how APD operates "wing it and see" problem with that is well established case law is not a wing-able thing it requires training and respect to the Law.

3.     This extension of the already unlawful unconstitutional (1 meeting trespass) had never been communicated to me in writing and exceeded the scope of Chair Constant's handwritten notice.

Officer Amburn had no legal authority to unilaterally extend a trespass order beyond one meeting to the 31st

4.     This statement amplifies demonstrated APD's pattern of arbitrary expansion of restrictions on my constitutional rights without legal basis or due process.

5.     On January 27, 2026, at approximately 6:01 AM, I sent an email to APD Chief Sean Case requesting a simple "yes or no" answer to whether APD would arrest me if I attended that evening's Assembly meeting.(exhibit B3)

6.     My email to Chief Case specifically cited clearly established constitutional law including Norse v. City of Santa Cruz, 629 F.3d 966 (9th Cir. 2010) and the Alaska Open Meetings Act, AS 44.62.310.

7.     I informed Chief Case that former APD Chief Kenneth McCoy had, when faced with similar unconstitutional trespass orders against me, confirmed that APD cannot enforce unconstitutional orders.(see exhibit E)

8.      At 8:04 AM on January 27, 2026, Gia Currier, Executive Assistant to Chief Case, responded on behalf of the Chief: "I spoke with Chief Case. Your trespass from the Assembly Chambers remains in effect and prohibits you from attending the Assembly meeting scheduled for January 27, 2026." (Exhibit B4)

9.      This email constitutes Chief Case's knowing, deliberate ratification of an unconstitutional prior restraint on my speech.

10.     Chief Case made this decision after receiving written notice of clearly established constitutional law, after being informed that Norse was decided 16 years ago, after being given the opportunity to follow Chief McCoy's constitutionally sound precedent, and with full knowledge that I had done nothing more than invoke First Amendment rights.

11.     At approximately 12:19 PM on January 27, 2026, I sent a follow-up email to Chief Case titled "Final Warning Regarding Constitutional Violations."

12.     This email informed Chief Case that enforcing the unconstitutional trespass order would result in personal liability for individual officers under § 1983, loss of qualified immunity, municipal liability, punitive damages, and potential criminal referrals.

13.     Chief Case did not respond to this email.

14.     On the evening of January 27, 2026, I went to the area near the Loussac Library. I held a sign with religious messages encouraging people to turn to Jesus Christ and addressing the LED streetlight issue.

15.     At approximately 5:35 PM, APD Officer Rivera (Badge No. 61037) approached me. I invoked my Fifth Amendment right against self-incrimination.

16.     I asked Officer Rivera whether APD wanted to continue to ban me from the meeting or allow me to participate.

17.     Officer Rivera left and returned at approximately 7:07 PM. He informed me that I was trespassed from the meeting.

18.     When I asked WHO had told Officer Rivera this information, Rivera stated he "forgot who he talked to" and that "he talked to a couple people, several people, other people." Rivera stated it was not the Chief.

19.     Rivera refused to identify who gave him this information and drove away. There were no cars behind Rivera when he was talking to me, and as I was

asking him who told him the information he was clearly avoiding the source. It seemed notably, suspicious.

20.    As a result of this exclusion, I was unable to testify on AO 2026-14 (the education tax levy), the bond propositions, or any other matters on the January 27, 2026 agenda. January 27, 2026 regular assembly meeting video available on YouTube at this link. https://youtu.be/Fj5sXmPZ2LM?si=RF5nrmZqeA1lBg_e

State Action by Allied Universal Security Guards

1.    Allied Universal security guards and the individual Doe defendants were "state actors" subject to constitutional constraints when they confronted me on January 13, 2026.

2.    The Supreme Court has established that private actors become state actors liable under § 1983 when they act jointly with government officials or pursuant to governmental compulsion. Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).

3.    Allied guards satisfy both prongs of the Lugar test for state action:

First Prong (Deprivation Caused by State Authority)

1.    The deprivation of my rights was caused by Allied guards exercising authority created by Alaska security guard licensing statutes (AS 18.65.400-490) that delegate police-like powers to licensed security guards, the Municipality's contract with Allied Universal delegating law enforcement functions at government facilities, and Assembly Chair Constant's governmental order summoning the guards and directing them to remove me.

Second Prong (Defendant is State Actor)

1.    Allied guards were state actors because they responded to a direct order from a government official (Chair Constant) acting in his official capacity during an official government meeting, performed a traditional government function—law enforcement and control of access to a public facility, wore municipal badges identifying them as governmental authorities, and acted in concert with state actors by coordinating with Assembly Chair Constant and APD officers.

2.    The guards were not acting as ordinary private security protecting a private business. They were performing a governmental function—law enforcement at a public facility—pursuant to direct orders from a government official during a government meeting to enforce a governmental decision (censorship of protected speech).

3.      The Ninth Circuit has held that private security personnel who act at the direction of government officials or perform governmental functions are state actors liable under § 1983. Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826 (9th Cir. 1999).

Pattern and Practice

1.      The Municipality of Anchorage has established a systematic pattern of deploying armed force—through police and contracted security agents acting jointly—against citizens who accept government invitations to speak but express disfavored viewpoints.

Documented Pattern of Constitutional Violations

1.      The Municipality has a documented history of similar violations:

a. September 2021 Alaska State Fair incident where as was warning people about the imminent health risk of the covid-19 injection      I was physically restrained by Crowd Management Services security contractors while APD officers participated, demonstrating joint action between municipal police and private security contractors. *DARDEN V. CROWD MANAGEMENT SERVICE, No. 24-325 (9th Cir. 2025)*

b. December 2020 dual retaliatory arrests where I was arrested at an Assembly meeting as I was warning people about the imminent health risk of the covid-19 injection and APD appeared at my workplace days later to issue a trespass citation for going to a School board meeting I was invited to days earlier challenged me in court for years for peacefully participating in government proceedings and questioning heath concerns and constitutional concerns, of life liberty and the pursuit of happiness.

c. June 2021 Pride Month Ceremony where Assembly leadership ordered my immediate removal after I exercised speech rights, and security forcibly removed me while APD searched me. Was handcuffed at this meeting for reporting unwelcome assault to Anchorage police officers.

1.      Assembly Chair Constant has demonstrated a pattern of arbitrarily censoring my speech during public testimony at Assembly meetings over months and years, including calling spurious "points of order," interpreting "germaneness" requirements in an arbitrary, viewpoint-based manner, and using armed security as intimidation.

2.    Upon information and belief, other Assembly members and municipal officials are aware of this pattern and have failed to intervene or discipline Chair Constant, thereby ratifying his unconstitutional conduct.

Clearly Established Law

1.    The law governing this case has been clearly established for decades.

Public Forum Doctrine

1.    The United States Supreme Court established over 40 years ago that public comment periods at government meetings are "quintessential" forums for citizen speech. City of Madison v. Wisconsin Employment Relations Comm'n, 429 U.S. 167, 175 (1976).

2.    In designated public forums, "the government may not prohibit speech on the basis of its content without a compelling reason, and then only through regulations narrowly tailored to serve that reason." Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998).

3.    "Viewpoint discrimination is... an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995).

Norse v. City of Santa Cruz - Directly On Point

1.    In 2010—16 years before the events of this case—the Ninth Circuit decided Norse v. City of Santa Cruz, 629 F.3d 966 (9th Cir. 2010), a case with facts remarkably similar to those presented here.

2.    In Norse, a speaker was removed from a city council meeting's public comment period after making statements critical of the police. The Ninth Circuit held: "The First Amendment protects a speaker who has been given permission to speak at an open public meeting from being expelled based on the content of his speech." Norse, 629 F.3d at 974.

3.    The Ninth Circuit further held: "We have no trouble concluding that Norse's removal from the meeting based on the content of his speech violated the First Amendment." Id. at 975.

4.    Norse clearly established that Assembly chambers during public comment are designated public forums, speakers cannot be removed based on the

content of their speech, invoking constitutional rights or criticizing government procedures is protected speech, and officials who remove speakers on this basis violate clearly established law and are not entitled to qualified immunity.

5.      Every defendant in this case knew or should have known about Norse. It is a Ninth Circuit decision binding on Alaska, decided 16 years ago, and directly addresses the conduct at issue.

Retaliation for Protected Speech

1.      The Supreme Court has held that government retaliation against individuals for exercising First Amendment rights violates the Constitution. Houston Community College System v. Wilson, 595 U.S. 468 (2022); Nieves v. Bartlett, 139 S. Ct. 1715 (2019).

2.      In Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018), the Supreme Court held that a retaliatory arrest violates the First Amendment even if probable cause exists.

3.      The close temporal proximity between protected speech and adverse action is strong evidence of retaliatory intent. Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003).

Prior Restraints

1.      The doctrine prohibiting prior restraints on speech is one of the oldest and most fundamental principles of First Amendment law. Near v. Minnesota, 283 U.S. 697 (1931).

2.      "Prior restraints on speech... are the most serious and the least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976).

Fourth Amendment - Seizure Without Cause

1.      It is clearly established that law enforcement officers may not seize an individual without probable cause or reasonable suspicion. Terry v. Ohio, 388 U.S. 1 (1968).

2.      When armed officers or armed security acting under color of law confront an individual and order them to leave under threat of arrest, a Fourth Amendment seizure has occurred.

3.      It is clearly established that officers cannot seize someone solely because they exercised First Amendment rights.

## Alaska Constitutional Law

1.     The Alaska Constitution provides broader protection for speech and petition rights than the federal First Amendment.

2.     Alaska Constitution Article I, Section 5 states: "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

3.     Alaska Constitution Article I, Section 6 states: "The right of the people peaceably to assemble, and to petition the government shall never be abridged."

## Alaska Open Meetings Act

1.     The Alaska Open Meetings Act, AS 44.62.310, requires: "All meetings of a governmental body of a public entity are open to the public."

2.     AS 44.62.312(c) provides: "The following actions are void: (1) a final decision, including an executive session, made in violation of this section."

3.     The Alaska Supreme Court has held that the Open Meetings Act "should be construed liberally in favor of public access" and that exemptions should be "narrowly construed." Anchorage Sch. Dist. v. Anchorage Daily News, 779 P.2d 1191, 1193 (Alaska 1989).

## Harm Suffered

1.     As a direct and proximate result of Defendants' constitutional violations, I have suffered and continue to suffer significant harm.

### Loss of Constitutional Rights

1.     I was deprived of my fundamental First Amendment rights to speak on matters of public concern, petition the government for redress of grievances, participate in the democratic process, and express my religiously-informed views on public policy.

2.     I was deprived of my Fourth Amendment right to be free from unreasonable seizure.

3.     These deprivations constitute irreparable constitutional injury for which nominal damages are appropriate even in the absence of other proof of harm. Carey v. Piphus, 435 U.S. 247 (1978).

## Interference with Political Activities and Campaigns

1.      I am a declared candidate for United States Senate from Alaska (FEC ID: S6AK00268) and for Anchorage School Board, Seat D.

2.      Defendants' exclusion of me from Assembly meetings directly interfered with these political campaigns by preventing me from speaking on issues relevant to the positions I seek, denying me the opportunity to demonstrate to voters my engagement with municipal governance, depriving me of a platform to express my policy positions before the April 7, 2026 election, and creating the false public perception that I am a "troublemaker" who has been "banned" from public meetings.

3.      The January 27, 2026 exclusion was particularly harmful because AO 2026-14—the education tax levy—is directly relevant to my School Board candidacy.

Chilling Effect on Future Speech

1.      The trespass notice, Chief Case's ratification, and the threat of arrest create an ongoing chilling effect on my exercise of First Amendment rights.

2.      I reasonably fear that if I attend future Assembly meetings, I will be targeted discriminated restricted confronted with armed unlicensed private security guards and detained by constitutionally ignorant persons.

3.      This fear is not speculative. Chief Case has made clear that APD will stand behind directives of the Assembly even if it violates clearly established law.

Emotional Distress and Dignitary Harm

1.      I suffered significant emotional distress from being forcibly removed from a public meeting by armed guards and police officers solely for exercising constitutional rights.

2.      The experience of being confronted by an armed guard, threatened with arrest, and marched out of a public building while hundreds of people watched was humiliating, degrading, and traumatic.

Reputational Harm

1.      Defendants' actions have harmed my reputation in the community by creating the false impression that I engaged in wrongdoing.

2.      This reputational harm directly impacts my political campaigns and my work with LawHelpAK.com.

Lost Opportunity to Influence Public Policy

1.      I was excluded from testifying on multiple critical ballot measures and ordinances, including AO 2025-140, AO 2026-14, and bond propositions totaling over $57 million.

2.      These ballot measures will appear before voters on April 7, 2026. My exclusion deprived me of the opportunity to influence public opinion on these measures before the election.

Violation of Religious Exercise

1.      My civic engagement is an exercise of my religious faith. I believe Christians have a duty to participate in self-governance and hold government accountable.

2.      Defendants' exclusion of me from Assembly meetings interfered with my free exercise of religion.

## COUNT I

## FIRST AMENDMENT RETALIATION

## (42 U.S.C. § 1983)

## (Against All Defendants)

1.      I incorporate by reference all preceding paragraphs as if fully set forth herein.

2.      The First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects citizens' rights to freedom of speech and to petition the government for redress of grievances.

3.      I engaged in protected First Amendment activity when I testified during the public comment period about LED streetlight ordinances, expressed my religiously-informed views about the health effects of LED lighting, criticized the arbitrary interruptions of my testimony, and invoked my First Amendment rights.

4.      Each of these activities is protected by the First Amendment and cannot be the basis for adverse government action.

5.      Defendants took adverse action against me by ordering my immediate removal from the Assembly chambers, summoning armed security guards to enforce the removal, confronting me with armed force, ordering me to leave the building under threat of arrest, issuing a trespass notice (see exhibit A) banning me from

future meetings, ratifying and extending the trespass ban, and excluding me from the January 27, 2026 meeting.

6.  My protected speech was a substantial or motivating factor in Defendants' adverse actions.

7.  The temporal proximity between my invocation of First Amendment rights and Chair Constant's order to remove me (a matter of seconds) establishes a strong inference of retaliatory intent. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).

8.  Defendants cannot identify any legitimate, non-retaliatory reason for my removal. I had not violated any time limit, had not used profanity or threatening language, had not been physically disruptive, and had not violated any content-neutral procedural rule.

9.  The sole basis for removal was my invocation of constitutional rights in response to viewpoint-based censorship.

10.  Defendants' retaliatory actions violated clearly established law. *Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010), decided 16 years before this incident, clearly established that speakers cannot be removed from public comment periods based on the content of their speech.

11.  No reasonable official could have believed that removing me from a public forum immediately after I invoked my First Amendment rights was constitutional.

12.  Defendants are therefore not entitled to qualified immunity for their retaliatory actions.

WHEREFORE, I respectfully request that this Court enter judgment in my favor on Count I and award appropriate relief as set forth in the Prayer for Relief.

## COUNT II

### FIRST AMENDMENT VIEWPOINT DISCRIMINATION

### (42 U.S.C. § 1983)

### (Against All Defendants)

1.  I incorporate by reference all preceding paragraphs as if fully set forth herein.

2.      The Anchorage Assembly chambers during the public testimony period constitute a "designated public forum" under First Amendment doctrine.

3.      In a designated public forum, government may not prohibit speech based on its content without satisfying strict scrutiny. Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998).

4.      Viewpoint discrimination—censoring speech based on the specific ideology, opinion, or perspective expressed—is "an egregious form of content discrimination" that is presumptively unconstitutional. Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995).

5.      Defendants engaged in viewpoint discrimination against me by interrupting my testimony based on disagreement with my characterization of LED lights' health effects, claiming my discussion of LED lights was "not germane" to LED streetlight ordinances, ordering my removal after I criticized the arbitrary nature of these interruptions, and treating my religiously-informed perspective on LED lighting as less worthy of protection than other viewpoints.

6.      Assembly Member Scott Myers' point of order was pretextual and viewpoint-based. Myers disagreed with my assertion that LED lights are harmful and used a spurious "germaneness" objection to silence that viewpoint.

7.      Chair Constant's decision to uphold this pretextual point of order and subsequently order my removal was similarly viewpoint-based.

8.      Upon information and belief, speakers with viewpoints favored by the Assembly majority are not subjected to similar interruptions or removals, even when their testimony contains tangential or arguably non-germane content.

9.      Defendants cannot satisfy strict scrutiny because no compelling governmental interest exists in censoring my health-related perspective on LED lighting during a meeting about LED streetlights.

10.     The viewpoint discrimination here is particularly egregious because it targeted my religious perspective on public policy, my critical perspective on government procedures, and my constitutional advocacy.

11.     Defendants' viewpoint discrimination violated clearly established law.

WHEREFORE, I respectfully request that this Court enter judgment in my favor on Count II and award appropriate relief as set forth in the Prayer for Relief.

## COUNT III

## FIRST AMENDMENT PRIOR RESTRAINT

## (42 U.S.C. § 1983)

## (Against Constant, Gardner, Mayor LaFrance, Chief Case, and Municipality)

1.      I incorporate by reference all preceding paragraphs as if fully set forth herein.

2.      The trespass notice (exhibit A)issued to me following the January 13, 2026 incident, as ratified and extended by Chief Case and Mayor LaFrance, constitutes an unconstitutional prior restraint on my future speech.

3.      "A prior restraint on expression comes in many guises" but is generally defined as "an administrative system or judicial order that prevents speech before it takes place." Alexander v. United States, 509 U.S. 544, 550 (1993).

4.      The trespass notice operates as a prior restraint by threatening me with arrest if I return to Assembly chambers to exercise my petition rights, creating a chilling effect on my willingness to attend future meetings, and forcing me to choose between exercising my First Amendment rights and facing criminal prosecution.

5.      Prior restraints "are the most serious and the least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976).

6.      Defendants cannot overcome the heavy presumption against prior restraints because my speech poses no threat to public safety or order, the trespass notice is not narrowly tailored, and less restrictive alternatives exist.

7.      The prior restraint is particularly problematic because it targets core political speech, is viewpoint-based, operates indefinitely, and lacks procedural safeguards.

8.      Chief Case's January 27, 2026 ratification of the prior restraint is particularly egregious because he was given written notice of the clearly established law, was informed that Norse decided the issue 16 years ago, and nevertheless chose to enforce the unconstitutional ban.

WHEREFORE, I respectfully request that this Court enter judgment in my favor on Count III and award appropriate relief as set forth in the Prayer for Relief.

## COUNT IV

# FOURTH AMENDMENT UNLAWFUL SEIZURE

## (42 U.S.C. § 1983)

## (Against Allied Defendants, APD Defendants, Chief Case, and Municipality)

1. I incorporate by reference all preceding paragraphs as if fully set forth herein.

2. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects against unreasonable searches and seizures.

3. I was seized within the meaning of the Fourth Amendment on January 13, 2026 when armed Allied Universal security guard approached me at the podium, multiple security personnel surrounded me, uniformed APD officers arrived, and APD Officer Weinrick issued a "lawful order" for me to leave the building.

4. This seizure occurred without probable cause or reasonable suspicion that I had committed, was committing, or was about to commit any crime or violation.

5. I had violated no criminal statute, violated no municipal ordinance, violated no Assembly procedural rule, not trespassed, posed no threat to persons or property, and engaged solely in protected First Amendment activity.

6. The sole basis for the seizure was my exercise of protected speech.

7. It is clearly established that exercising First Amendment rights cannot constitute probable cause for seizure or arrest.

8. Allied Defendants are liable for the Fourth Amendment violation because they acted under color of state law and knowingly participated in seizing me without legal justification.

9. APD Defendants are liable for the Fourth Amendment violation because they completed the seizure by ordering me to leave under threat of arrest and enforced an unlawful order from a government official without independent assessment of whether my removal was legally justified.

WHEREFORE, I respectfully request that this Court enter judgment in my favor on Count IV and award appropriate relief as set forth in the Prayer for Relief.

## COUNT V

## FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

## (42 U.S.C. § 1983)

## (Against Constant, Gardner, Mayor LaFrance, Chief Case, and Municipality)

1. I incorporate by reference all preceding paragraphs as if fully set forth herein.

2. The Fourteenth Amendment protects against deprivation of liberty without due process of law.

3. I have a constitutionally protected liberty interest in attending public meetings, exercising First Amendment rights in public forums, freedom from restraint on my physical movement, and reputation and standing in the community.

4. Defendants deprived me of these liberty interests through the trespass notice and subsequent enforcement without providing any due process.

5. Procedural due process requires, at minimum, notice of the charges or grounds for exclusion, opportunity to be heard before a neutral decision-maker, opportunity to present evidence and respond to allegations, written decision with findings of fact and conclusions of law, and right to appeal to a higher authority. Mathews v. Eldridge, 424 U.S. 319 (1976).

6. Defendants provided none of these safeguards.

7. The trespass notice was issued immediately after the January 13 incident with no opportunity for me to be heard, drafted by Chair Constant who had a conflict of interest, delivered by Municipal Attorney Gardner without any hearing or process, extended by Chief Case without investigation or explanation, and not subject to any appeal or review by a neutral party.

8. Under the Mathews v. Eldridge balancing test, the process provided (zero) was grossly inadequate.

WHEREFORE, I respectfully request that this Court enter judgment in my favor on Count V and award appropriate relief as set forth in the Prayer for Relief.

## COUNT VI

## MUNICIPAL LIABILITY UNDER MONELL

## (42 U.S.C. § 1983)

## (Against Municipality of Anchorage)

1.      I incorporate by reference all preceding paragraphs as if fully set forth herein.

2.      The Municipality of Anchorage is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because my constitutional injuries resulted from official municipal policies, municipal customs and practices, deliberate indifference to constitutional rights, and ratification of constitutional violations by final policymakers.

Official Policies

1.      The Municipality maintains official policies that caused or contributed to my constitutional injuries:

Policy 1: Contracting with Allied Universal for Armed Security Without Constitutional Training

1.      The Municipality contracts with Allied Universal to provide security services at Assembly meetings, including the use of armed guards, delegating governmental law enforcement functions to a private company without ensuring that the private actors are trained on constitutional limitations on their authority.

Policy 2: Issuing Municipal Badges to Private Security Guards

1.      The Municipality's policy of issuing municipal badges to Allied Universal guards creates the appearance that private security guards are government law enforcement officers.

Policy 3: Unreviewable Discretion for Assembly Chair

1.      The Municipality maintains a policy of giving the Assembly Chair unreviewable discretion to interrupt speakers during public testimony, determine what is "germane" without objective standards, summon armed security to remove speakers, and issue trespass notices without review or appeal.

Policy 4: No Training Requirements for Assembly Members

1.      Upon information and belief, the Municipality provides little or no training to Assembly members on First Amendment limitations on censoring public comment, clearly established law such as Norse v. City of Santa Cruz, Alaska Open

28

Meetings Act requirements, and due process requirements for excluding citizens from public meetings.

## Municipal Customs and Practices

1.      The Municipality maintains customs and practices that caused my injuries:

### Custom 1: Suppressing Critical Speech During Public Comment

1.      Upon information and belief, the Municipality has a custom and practice of interrupting speakers who criticize the Assembly or municipal officials, applying "germaneness" rules more strictly to speakers with disfavored viewpoints, using security and police to remove citizens who exercise constitutional rights, and issuing trespass notices to silence persistent critics.

### Custom 2: Targeting Me for My Constitutional Advocacy

1.      The Municipality has developed a custom of targeting me specifically because of my history of attending Assembly meetings regularly, criticizing government officials during public testimony, invoking constitutional rights, and filing lawsuits to vindicate constitutional rights.

### Custom 3: Using Private Armed Security to Chill Speech

1.      The Municipality has a custom of using armed private security guards to intimidate and chill citizen speech at public meetings.

## Failure to Train

1.      The Municipality is liable under Monell for failure to train its employees and contractors in constitutional requirements. City of Canton v. Harris, 489 U.S. 378 (1989).

2.      The need for training on First Amendment limitations in public forums is obvious. Public comment periods at government meetings are quintessential First Amendment forums.

3.      The Municipality's failure to train Allied Universal guards, APD officers, and Assembly members on constitutional requirements constitutes deliberate indifference.

## Ratification by Final Policymakers

1.      The Municipality is liable under Monell because final municipal policymakers ratified the constitutional violations. City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

2.      The following final policymakers ratified the violations:

a. Assembly Chair Constant personally ordered my removal and personally drafted the trespass notice.

b. Municipal Attorney Gardner personally delivered the trespass notice after witnessing the constitutional violations.

c. Mayor LaFrance ratified the constitutional violations by allowing Chief Case to enforce the unconstitutional trespass order and failing to intervene.

d. Chief Case's January 27, 2026 decision to ratify and enforce the trespass order constitutes official policy ratification.

1.      The municipal policies, customs, practices, failures to train, and ratifications described above were the moving force behind my constitutional injuries. Bd. of County Comm'rs v. Brown, 520 U.S. 397 (1997).

WHEREFORE, I respectfully request that this Court enter judgment in my favor on Count VI and award appropriate relief as set forth in the Prayer for Relief.

## COUNT VII

## VIOLATION OF ALASKA STATUTE AS 18.65.460

### (Negligence Per Se and Statutory Violation)

### (Against Allied Defendants and Municipality)

1.      I incorporate by reference all preceding paragraphs as if fully set forth herein.

2.      Alaska Statute AS 18.65.460 provides: "A security guard or armed security guard shall produce the guard's license or temporary permit immediately upon request."

3.      This statute imposes a mandatory, non-discretionary duty on security guards.

4.      On January 13, 2026, I requested that the armed Allied guard (John Doe 1) produce his Alaska security guard license.

5.      John Doe 1 refused to produce his license in violation of AS 18.65.460.

6.      I made the same request of the other two Allied guards. John Doe 2 showed a license too quickly and upside down for me to read the required information. Jane Doe 1 failed to produce a license.

7.      These refusals violated AS 18.65.460 and deprived me of information I was statutorily entitled to receive.

8.      The violations were particularly harmful because John Doe 1 was armed with a deadly weapon, all three guards were acting under color of governmental authority, the guards were attempting to forcibly remove me from a public building, and I needed to verify whether the armed individual approaching me was legally authorized to carry a firearm.

9.      Violation of AS 18.65.460 constitutes negligence per se under Alaska tort law.

10.     Allied Universal Security Services is vicariously liable for its employees' violations of AS 18.65.460 under the doctrine of respondeat superior.

11.     The Municipality is liable for the AS 18.65.460 violations because the Municipality contracted with Allied Universal, had a duty to ensure its contractors complied with Alaska law, failed to include in its contract requirements for AS 18.65.460 training and compliance, and APD officers witnessed the violations and refused to investigate.

WHEREFORE, I respectfully request that this Court enter judgment in my favor on Count VII and award appropriate relief as set forth in the Prayer for Relief.

## COUNT VIII

## DECLARATORY JUDGMENT

### (28 U.S.C. §§ 2201-2202)

### (Against All Defendants)

1.      I incorporate by reference all preceding paragraphs as if fully set forth herein.

2.      An actual, justiciable controversy exists between me and Defendants concerning whether the trespass notice issued to me is constitutional, whether I have a right to attend future Anchorage Assembly meetings, whether Assembly Chair Constant may exclude me from public comment based on speech content, and whether APD may arrest me for attending Assembly meetings to exercise First Amendment rights.

3.     These controversies are real, substantial, and require judicial resolution. I desire to attend future Assembly meetings but I reasonably fear that if I attend future Assembly meetings, I will be targeted discriminated restricted confronted with armed unlicensed private security guards and detained by constitutionally ignorant persons. reasonably fear possible arrest if I do so.

4.     I request that this Court declare:

Declaration 1

The trespass notice issued to me following the January 13, 2026 incident is unconstitutional, null, void, and unenforceable as a matter of law because it was issued in retaliation for protected First Amendment activity, constitutes an unconstitutional prior restraint on future speech, violates the Alaska Open Meetings Act requirement that meetings be open to the public, and was issued without due process of law.

Declaration 2

I have a constitutional right under the First and Fourteenth Amendments to attend Anchorage Assembly meetings during the public comment period and to address the Assembly on matters of public concern, subject only to reasonable, content-neutral time, place, and manner restrictions.

Declaration 3

Assembly Chair Constant and other Assembly members may not exclude me from Assembly meetings or interrupt my testimony based on disagreement with the content or viewpoint of my speech, my invocation of constitutional rights, my criticism of Assembly procedures or officials, or my religious perspective on matters of public policy.

Declaration 4

The Anchorage Police Department may not arrest or threaten to arrest me for attending Assembly meetings and exercising First Amendment rights, absent probable cause that I have committed a crime independent of my protected speech.

Declaration 5

Allied Universal security guards, when acting at the direction of Assembly officials or performing law enforcement functions at municipal facilities, are state actors subject to constitutional constraints and may not remove citizens from public forums based on speech content.

Declaration 6

The January 13, 2026 removal of me from the Assembly chambers violated clearly established First and Fourth Amendment rights, and no reasonable official could have believed the conduct was lawful.

WHEREFORE, I respectfully request that this Court enter judgment in my favor on Count VIII and issue the declaratory relief requested.


# COUNT IX

## VIOLATION OF ALASKA OPEN MEETINGS ACT - VOID ORDINANCES

## (AS 44.62.310-312)

## (Against Municipality, Constant, Gardner, Mayor LaFrance, Chief Case, All Assembly Members)

1.      I incorporate by reference all preceding paragraphs as if fully set forth herein.

### Statutory Framework

1.      The Alaska Open Meetings Act, AS 44.62.310(a), provides: "All meetings of a governmental body of a public entity are open to the public except as otherwise provided by this section or another provision of law."

2.      AS 44.62.312(c) provides: "The following actions are void: (1) a final decision, including an executive session, made in violation of this section."

3.      The Alaska Supreme Court has held that the Open Meetings Act "should be construed liberally in favor of public access" and that exceptions "should be narrowly construed." Anchorage Sch. Dist. v. Anchorage Daily News, 779 P.2d 1191, 1193 (Alaska 1989).

The January 13, 2026 Defective Public Hearing

1.      On January 13, 2026, the Anchorage Assembly conducted a public hearing on Ordinance No. AO 2025-140, which concerned creation of the Eagle Bluff Estates Street Light Service Area.

2.      AO 2025-140 was approved by the Assembly on January 13, 2026 and is scheduled to appear as a ballot proposition before voters on April 7, 2026.

3.      During the public testimony period on AO 2025-140, I exercised my statutory and constitutional right to address the Assembly regarding the health effects of LED streetlights—the very technology at issue in the ordinance.

4.      While I was testifying on AO 2025-140, Assembly Member Myers called a pretextual point of order, Assembly Chair Constant upheld the spurious objection, I invoked my First Amendment rights, Chair Constant immediately ordered my removal, armed security guards confronted me, APD officers ordered me to leave, and I was excluded from the remainder of the meeting.

5.      My exclusion from the January 13, 2026 meeting violated the Alaska Open Meetings Act because a meeting is not "open to the public" when citizens are removed based on viewpoint discrimination, I was denied my statutory right to testify at the public meeting, the removal sent a chilling message to all citizens, and the removal was based on the content and viewpoint of my speech.

Ratification by Final Policymakers

1.      The constitutional and statutory violations at the January 13, 2026 meeting were ratified by final municipal policymakers:

a. Municipal Attorney Eva Gardner personally witnessed the constitutional violations, knew I had been removed solely for protected speech, and nevertheless delivered the handwritten trespass notice.(see exhibit A)

b. Police Chief Sean Case received written notice (exhibit B3-B5) that the trespass violated clearly established constitutional law, was specifically informed of Norse v. City of Santa Cruz, and nevertheless ratified and extended the unconstitutional trespass.

c. Mayor Suzanne LaFrance has final policymaking authority as chief executive, personally witnessed the January 13, 2026 incident, and failed to intervene or overrule the unconstitutional trespass.

d. Assembly Chair Christopher Constant ordered my removal, drafted the trespass notice by hand, (Exhibit A) and determined the scope of the exclusion.

e. All Assembly members were present (exhibit D) during my removal and had the authority to make a motion to stop the violation of my constitutional rights but chose not to do so, thereby ratifying Chair Constant's unconstitutional conduct.

Legal Effect: Void Ab Initio

1.      Under AS 44.62.312(c), the Assembly's approval of AO 2025-140 on January 13, 2026 is void because it was "made in violation of" the Open Meetings Act.

2.      The public hearing was defective because a member of the public was unconstitutionally excluded mid-testimony, the exclusion was ratified by final policymakers, the exclusion sent a chilling message to other potential speakers, and the Assembly did not hear all relevant public input before voting.

The January 27, 2026 Defective Meeting

1.      The violations continued and compounded on January 27, 2026, when the Assembly considered (exhibit D)

a. AO 2026-14: Education tax levy (directly relevant to my School Board candidacy)

b. AO 2026-2: $8,990,000 bond proposition (Public Safety and Transit)

c. AO 2026-3(S): $6,050,000 bond proposition (Parks and Recreation)

d. AO 2026-4: $38,450,000 bond proposition (Roads and Drainage)

e. AO 2026-5: $7,150,000 bond proposition (Community facilities)

f. AO 2026-6: $1,720,000 bond proposition (Chugach State Park Access)

g. AO 2026-7: $2,500,000 bond proposition (Fire protection)

h. AO 2026-8: $350,000 bond proposition (APD Elmore Station)

i. AO 2026-15: Charter amendment

1.      All of these ballot measures were approved at a meeting from which I was unconstitutionally excluded through Chief Case's ratification of the trespass order.

2.      My exclusion from the January 27, 2026 meeting was particularly harmful because AO 2026-14 concerns school funding—directly relevant to the School Board seat I seek, all ballot measures involve municipal governance issues relevant to my Senate campaign, as a taxpayer I have a fundamental right to comment on over $57 million in bond proposals, and the exclusion of a declared political candidate from ballot measure hearings sends a message that critics of government may be silenced.

3.      The January 27, 2026 meeting was not "open to the public" within the meaning of AS 44.62.310 when the Municipality used armed police to exclude a citizen-candidate for exercising constitutional rights.

Relief Required

1.      Because the public hearings on these ballot measures were conducted in violation of the Alaska Open Meetings Act and constitutional requirements, and because these violations were ratified by final municipal policymakers, the appropriate relief is:

a. Declaratory Relief: Declare that AO 2025-140, AO 2026-14, AO 2026-2, AO 2026-3(S), AO 2026-4, AO 2026-5, AO 2026-6, AO 2026-7, AO 2026-8, and AO 2026-15 are void ab initio pursuant to AS 44.62.312(c).

b. Injunctive Relief: Remove these measures from the April 7, 2026 ballot, order the Assembly to conduct new public hearings with proper procedures, enjoin the Municipality from enforcing the trespass so I can participate, and require the Assembly to consider the measures anew after full public input.

Causation and Harm(exhibit A,B3-B5, C, D)

1.      As a direct and proximate result of the OMA violations, I have suffered denial of statutory rights, a defective electoral process where ballot measures proceed to voters without full public input, campaign interference, precedent for future violations, and irreparable constitutional harm.

WHEREFORE, I respectfully request that this Court:

1.      Declare that the public hearings on AO 2025-140 (January 13, 2026) and AO 2026-14, 2026-2, 2026-3(S), 2026-4, 2026-5, 2026-6, 2026-7, 2026-8, and 2026-15 (January 27, 2026) were conducted in violation of the Alaska Open Meetings Act and constitutional requirements.

2.      Declare that these ordinances are void ab initio pursuant to AS 44.62.312(c).

3.      Issue preliminary and permanent injunctions removing these measures from the April 7, 2026 ballot, ordering new public hearings with proper procedures, prohibiting enforcement of the trespass notice, and requiring Assembly to reconsider measures after full public input.

4.      Award damages for violation of statutory and constitutional rights.

5.      Award attorney's fees and costs pursuant to applicable law.

6.      Grant such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, I, Dustin Thomas Darden, respectfully request that this Court:

A. DECLARATORY RELIEF

1.      Declare that the trespass notice issued to me is unconstitutional, null, void, and unenforceable.

2.      Declare that I have a constitutional right to attend Anchorage Assembly meetings and participate in public comment periods.

3.      Declare that Defendants violated my clearly established First, Fourth, and Fourteenth Amendment rights on January 13 and January 27, 2026.

4.      Declare that the individual defendants are not entitled to qualified immunity for the constitutional violations.

5.      Declare that Allied Universal security guards acted under color of state law and are subject to constitutional constraints when performing security functions at municipal facilities.

6.      Declare that the public hearings on AO 2025-140 and the ten ballot measures approved January 27, 2026 violated the Alaska Open Meetings Act and are void ab initio.

## B. INJUNCTIVE RELIEF

1.      Issue a preliminary and permanent injunction ordering Defendants to:

a. Rescind and void the trespass notice issued to me.

b. Permit me to attend all future Anchorage Assembly meetings without restriction, subject only to content-neutral rules applicable to all attendees.

c. Refrain from removing, excluding, or arresting me based on the content or viewpoint of my speech during public comment periods.

d. Provide me with written confirmation signed by this Court stating that I may attend Assembly meetings without threat of arrest.

1.      Issue an injunction removing the following measures from the April 7, 2026 ballot:

a. AO 2025-140 (Eagle Bluff Estates Street Light Service Area)

b. AO 2026-14 (Special Tax Levy for Anchorage School District)

c. AO 2026-2 (Public Safety and Transit Bond)

d. AO 2026-3(S) (Parks and Recreation Bond)

e. AO 2026-4 (Roads and Drainage Bond)

f. AO 2026-5 (Community Facilities Bond)

g. AO 2026-6 (Chugach State Park Access Bond)

h. AO 2026-7 (Fire Protection Bond)

i. AO 2026-8 (APD Elmore Station Bond)

j. AO 2026-15 (Charter Amendment)

1.       Issue an injunction requiring the Municipality to conduct new public hearings on the above-listed measures with full constitutional compliance before placing them on any future ballot.

2.       Issue an injunction requiring the Municipality to provide constitutional training to all Assembly members, Allied Universal security guards, and APD officers.

## C. COMPENSATORY DAMAGES

1.       Award compensatory damages in an amount $3,161.09 and any additional amount to be determined by trial for constitutional violations, emotional distress, dignitary harm, interference with political activities, chilling effect, interference with religious exercise, time and resources, reputational harm, and loss of opportunity to influence public policy.

## D. PUNITIVE DAMAGES

1.       Award punitive damages against the individual defendants in an amount sufficient to punish Defendants for willful, wanton, and reckless disregard of my clearly established constitutional rights and deter future constitutional violations.

## E. ATTORNEY'S FEES AND COSTS

1.       Award attorney's fees pursuant to 42 U.S.C. § 1988 for the value of my own legal work as a pro se litigant at $700 per hour it's a lot of work..

2.     Award costs of suit including filing fees, service of process, deposition costs, expert witness fees, and other litigation expenses.

### F. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

1.     Award pre-judgment interest on all damages from the dates of the violations to the date of judgment.

2.     Award post-judgment interest at the statutory rate.

### G. TRIAL BY JURY

1.     Grant my demand for trial by jury on all issues so triable.

### H. SUCH OTHER AND FURTHER RELIEF

1.     Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of February, 2026.

Dustin Thomas Darden

Plaintiff, Pro Se

Dustin Darden

/s/Dustin Darden

3951 Lakehurst Circle

Anchorage AK 99502

Phone: 907-884-5784

Email: lawhelpak@gmail.com

Website LawHelpAK.com