# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DUSTIN THOMAS HOUSE DARDEN,

        Plaintiff,

       v.

SUZANNE LAFRANCE, *in her individual capacity and official capacity as Mayor of Anchorage*, *et al.*,

        Defendants.

Case No. 3:26-cv-00053-SLG

## <u>ORDER ON ALL PENDING MOTIONS</u>

Before the Court are five pending motions:

1. Plaintiff Dustin Thomas House Darden's Motion for a Temporary Restraining Order at Docket 19. Municipal Defendants[1] responded in opposition at Docket 32, to which Plaintiff replied at Docket 36.

---

[1] Municipal Defendants are Suzanne LaFrance, Anchorage Mayor, in her individual and official capacities; Christopher Constant, Anchorage Assembly Chair, in his individual and official capacities; Eva Gardner, in her individual and official capacities; Sean Case, Chief of the Anchorage Police Department ("APD"), in his individual and official capacities; Anna Brawley, in her individual and official capacities; Daniel Volland, in his individual and official capacities; Jared Goecker, in his individual and official capacities; Scott Myers, in his individual and official capacities; Erin Baldwin Day, in her individual and official capacities; Felix Rivera, in his individual and official capacities; George Martinez, in his individual and official capacities; Yarrow Silvers, in his individual and official capacities; Zac Johnson, in his individual and official capacities; Keith McCormick, in his individual and official capacities; Kameron Perez-Verdia, in his individual and official capacities; M. Weinrick, APD Officer, in his individual and official capacities; C.B. Waland, APD Officer, in his individual and official capacities; Carpenter, APD Officer, in his individual and official capacities; Amburn, APD Officer, in his individual and official capacities; D. Gutierrez, APD Officer, in his individual and official capacities; Rivera, APD Officer, in his individual and official capacities, and the Municipality of Anchorage. Plaintiff also names as Defendants Allied Universal Security Services, John Doe 1, an Allied Security Guard; John Doe 2, an Allied Security Guard;

2. Plaintiff's Amended Emergency Motion for a Preliminary Injunction at Docket 21. Municipal Defendants responded in opposition at Docket 31, to which Plaintiff replied at Docket 34.

3. Plaintiff's Motion for Expedited Consideration for Emergency Motion for Preliminary Injunction at Docket 22.

4. Municipal Defendants' Motion for 14-Day Extension of Time in Which to Respond to Amended Complaint at Docket 38. Plaintiff responded in opposition at Docket 40, to which Municipal Defendants replied at Docket 44.

5. Plaintiff's Request for Entry of Default Against Municipal Defendants Pursuant to Fed. R. Civ. P. 55(a) at Docket 39. Municipal Defendants responded in opposition at Docket 41, to which Plaintiff replied at Docket 42.[2]

Oral argument was not requested on any motion and is not necessary to the Court's determination.[3]

---

and Jane Doe 1, an Allied Security Guard.

[2] Also pending before the Court is Municipal Defendants' Motion for Extension of Time to Respond to Preliminary Injunction Motion at Docket 18. That motion was in regard to an initial Emergency Motion for Preliminary Injunction filed by Plaintiff at Docket 3. Plaintiff's initial motion was mooted when he filed his Amended Emergency Motion at Docket 21 and addressed herein. *See* Docket 43. As such, Municipal Defendants' Motion at Docket 18 is DENIED as moot.

[3] Plaintiff requested a hearing "no later than March 7, 2026" at the end of his Motion for Expedited Consideration for Emergency Motion for Preliminary Injunction. Docket 22 at 2. District of Alaska Local Civil Rule 7.1(f) requires that a request for oral argument be made "either by placing 'Oral Argument Requested' immediately below the title of a motion or the response to a motion or by separate filing within 5 days of the last filing pertaining to a motion." No compliant request for oral

## BACKGROUND

This suit arises out of Plaintiff's "forcibl[e] remov[al] from the Anchorage Assembly chambers during public testimony" on January 13, 2026.[4] Plaintiff alleges that on that evening, he was "exercise[ing] his fundamental right to address his elected representatives during the designated public comment period."[5]

A video recording of the incident is posted on the Municipality of Anchorage's YouTube page.[6] The Court takes judicial notice of the recording as the parties agree to its accuracy and authenticity, "[j]udicial notice of city council minutes, transcript, and video recording as public records is proper," and such recordings "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[7]

The video shows that Plaintiff spoke at four separate times during the public comment period on four agenda items on January 13, 2026.[8] First, Plaintiff

---

argument was made as to any of the pending motions before the Court.

[4] Docket 24 at 2, ¶ 1.

[5] Docket 24 at 2, ¶ 2.

[6] Docket 24 at 16, ¶ 66 ("The official meeting transcript and video recording preserve Chair Constant's exact words, providing unambiguous proof of the retaliatory nature of Plaintiffs removal. This recording is maintained by the Municipality of Anchorage on its YouTube channel."); Docket 31 at 3-4 (citing "Assembly Regular - January 13, 2026 - 2026-01-13 17:00:00," https://www.youtube.com/watch?v=xqEPg-BlWLM [hereinafter Video]).

[7] *Insight Psych. & Addiction, Inc. v. City of Costa Mesa*, 801 F. Supp. 3d 942, 954 (C.D. Cal. 2025); Fed. R. Evid. 201(b)(2).

[8] *See generally* Video at 1:36:31-1:39:40, 1:49:05-1:53:13, 2:26:20-2:30:00, 2:47:22-2:49:11.

approached the podium during the public comment period for an ordinance to revise certain community council map boundaries; Plaintiff stated that he needed to grab some paperwork from the lobby and asked Defendant Christopher Constant, the Chair of the Assembly, to keep the clock running while he left the room.[9]  Plaintiff returned to the podium about a minute later and testified that "AO 2025-119 is not located in the law for review and with that being said at this time I would like to invoke my First Amendment right to the United States Constitution, the freedom of speech, the freedom of religion, the freedom to redress my government of grievances."[10]  Plaintiff also cited to the Fifth Amendment and mentioned prayer and salvation.[11]  After Plaintiff's speaking time ran out, Defendant Constant said, "Thank you, Mr. Darden" and asked if there were any other members of the public who wished to testify on the council boundary item.[12]

Next, Plaintiff testified during the public comment period for the rezoning of 2.5 acres of land located in Eagle River.[13]  Plaintiff testified that since "there was no opposition visible from the public" he found it "appropriate to make a formal

---

[9] Video at 1:36:31-1:37:23.

[10] Video at 1:38:10-1:38:46.

[11] Video at 1:38:46-1:39:39.

[12] Video at 1:39:39-1:39:40.

[13] Video at 1:49:05-1:53:13.

objection" to the ordinance.[14] He then criticized the ordinance as "being brought in a fashion without interest from the public" which he found "concerning."[15] Defendant Assembly Member Scott Myers raised a point of order, noting that the ordinance had been brought before the people of Eagle River for input multiple times.[16] Defendant Chair Constant did not uphold the point of order, ruling that Plaintiff "is speaking to the item that is before us, despite the [lack of] veracity" and encouraged Plaintiff to "try to keep it tight to the matters before us in the public hearings."[17]

Plaintiff then continued to testify, noting "a point of order on the prior restraint of the most guarded constitutional amendment, which is the First Amendment."[18] Defendant Constant interrupted to tell Plaintiff that he was "veering off into an area outside of the ordinance before us."[19] Plaintiff then stated that he was allotted three minutes to speak and that he had been interrupted; Defendant Constand responded that "this is a limited public forum and you are allowed to speak on the matter before us, not on any subject" and that Plaintiff was "being warned."[20]

---

[14] Video at 1:49:30-1:50:08.

[15] Video at 1:50:08-1:50:41.

[16] Video at 1:50:47-1:50:56.

[17] Video at 1:50:56-1:51:12.

[18] Video at 1:51:18-1:51:34.

[19] Video at 1:51:34-1:51:44.

[20] Video at 1:51:46-1:52:06.

Plaintiff then used the remainder of his time to discuss how the germaneness requirement could be interpreted as intimidating members of the public from speaking on items of interest to them and that he had been unable to "compel a rational thought without fear of armed guards, armed agents of the state, by your intimidating tactics."[21] After Plaintiff's speaking time expired, Defendant Constant reiterated: "You have been warned, admonished, to keep your testimony to the items being heard before us." Plaintiff replied, "Excuse me? I have been warned for what?" Defendant Constant reiterated: "To keep your testimony germane to the matter before us."[22]

About half an hour later, Plaintiff testified during the public comment period on a school district capital bond.[23] Plaintiff testified about Christian religious concepts and that he is a taxpayer and this bond would thus affect him.[24] He then mentioned the Fifth and Sixth Amendments and the "arbitrary censorship" he witnessed.[25] Defendant Constant again asked Plaintiff to "speak to the specifics of this ordinance . . . please hue to the content of this ordinance."[26] Plaintiff then

---

[21] Video at 1:52:06-1:52:52.

[22] Video at 1:52:52-1:53:10.

[23] Video at 2:26:20-2:30:00.

[24] Video at 2:26:25-2:27:12.

[25] Video at 2:27:12-2:27:48.

[26] Video at 2:27:54-2:28:05.

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 6 of 25
Case 3:26-cv-00053-SLG     Document 45     Filed 03/16/26     Page 6 of 25

testified that the Assembly was "extract[ing] money from [his] bank account" in order to fund the bond.[27]  He then described how God "had King David fight a giant, with the stone. Hit him once in the head, and he was gone. Because he was prepared. Because he already took on the bear; he took on the lion."[28]  At this point, Defendant Assembly Member Baldwin Day raised a point of order "wondering if Mr. Darden could comment on the substance of this bond package" and questioning the germaneness of Plaintiff's testimony.[29]  Defendant Constant upheld the point of order, and again reminded Plaintiff to "do your best to stick to the item before us."[30]  Plaintiff then used the remainder of his time to discuss his citizenship and religion.[31]

Lastly, Plaintiff approached the podium a fourth time during the public comment period on an ordinance regarding a new tax service area in Eagle River to fund streetlights.[32]  "The proposed ordinance, AO 2025-140, would place on the April 7, 2026 municipal election ballot a proposal to expand the tax service area for maintenance and operation of streetlights for a new subdivision in Eagle River

---

[27] Video at 2:28:05-2:28:22.

[28] Video at 2:28:27-2:28:40.

[29] Video at 2:28:40-2:29:03.

[30] Video at 2:29:04-2:29:08.

[31] Video at 2:29:08-2:29:59.

[32] Video at 2:46:45-2:49:11.

with the existing Eagle River Light Service Area."[33] The ordinance does not mention LED lights or blue lights.[34]

Plaintiff began his testimony by describing himself as a "citizen of heaven" who has been "washed in the blood of Jesus Christ," the "King of Kings, the King of Glory," who "defeated death; on the third day he rose, the ground shook; he set time and history; it's 2026, 2026 years after his birth."[35] Plaintiff then began discussing "LED lightbulbs" and that "blue lights are bad . . . for you" because they are "like laser beams."[36] Defendant Assembly Member Scott Myers then called a point of order asking to get the discussion back on topic as the ordinance had nothing to do with blue lights or laser beams.[37] Defendant Constant then explained that the ordinance was about "a special light service area" and asked that Plaintiff "speak to the matter before [the Assembly]."[38] Plaintiff resumed testifying, speaking again about his citizenship and recited a portion of the pledge of

---

[33] Docket 31 at 8 (citing Docket 31-1).

[34] Docket 31-1.

[35] Video at 2:47:10-2:47:37.

[36] Video at 2:47:42-2:48:00.

[37] Video at 2:48:00-2:48:13; see Docket 24 at 2, ¶ 2; Docket 24 at 13-14, ¶¶ 49, 53 ("Plaintiff attended the January 13, 2026 meeting to address the LED streetlight ordinances. Plaintiffs interest in LED lighting stems from health and safety concerns, informed by his religious and philosophical worldview. . . . As a Christian, Plaintiff believes God created natural light for human benefit (Genesis 1:3-4) and that artificial blue light from LEDs may be harmful to God's creation.").

[38] Video at 2:48:13-2:48:26.

allegiance.[39] He stated that he has a First Amendment right to petition his government and that he was "just about done with the interruptions."[40]

At that point, Defendant Constant told Plaintiff that he was "out of order" and had "been warned"; Defendant Constand then asked security to remove Plaintiff.[41] Plaintiff responded that "security has no authority over me" and stated that "no one better touch me."[42] The video feed was then terminated.

Defendants Allied Security Guards Jone Doe 1, John Doe 2, and Jane Doe 1 then allegedly approached Plaintiff.[43] Defendant Municipal Attorney Eva Gardner then handed Plaintiff "a handwritten trespass notice drafted by Assembly Chair Constant purporting to ban Plaintiff from one Assembly meeting."[44] Plaintiff alleges that then "Anchorage Police Department [("APD")] officers arrived and, acting at the direction of the Assembly Chair, ordered Plaintiff to leave. Plaintiff immediately complied."[45]

---

[39] Video at 2:48:27-2:48:49.

[40] Video at 2:48:49-2:48:56; *see* Docket 24 at 2, ¶ 3.

[41] Video at 2:48:55-2:49:01; *see* Docket 24 at 2, ¶ 3.

[42] Video at 2:49:01-2:49:15.

[43] Docket 24 at 2-3, ¶ 4.

[44] Docket 24 at 3, ¶ 5; *see* Docket 24 at 18, ¶ 80; Docket 3-1 (Trespass Notice identifying January 13, 2026, incident in the Assembly Chambers where Dustin Darden "refused to testify on the matters on the agenda during the public hearing" such that he was being trespassed for "disorderly conduct.").

[45] Docket 24 at 3, ¶ 6; *see* Docket 24 at 17-18, ¶¶ 71, 78 (alleging conduct by Defendant APD officers M. Weinrick and D. Gutierrez).

On January 27, 2026, Defendant Anchorage Police Department Chief Sean Case "direct[ed] that Plaintiff was trespassed from the January 27 Assembly meeting despite Plaintiff's written notice to Chief Case that the trespass order violated clearly established constitutional law."[46]  Plaintiff alleges that he indeed was excluded from the January 27, 2026, Assembly meeting.[47]

Plaintiff alleges that the January 27 "meeting addressed critical matters, including: (a) AO 2026-14: A special tax levy proposition for Anchorage School District operational expenses, to appear on the April 7, 2026 ballot; (b) multiple bond propositions totaling over $57 million for various municipal purposes; and (c) AO 2026-15: Amendment to the Home Rule Charter."[48]  Plaintiff alleges that, "[a]s a declared candidate for Anchorage School Board, Plaintiff had particular interest in testifying on AO 2026-14 (the education tax levy) and making his positions known to voters before the April 7, 2026 election."[49]

Plaintiff brings eight counts against Defendants: (1) retaliation in violation of the First Amendment;[50] (2) viewpoint discrimination in violation of the First

---

[46] Docket 24 at 3, ¶ 7; *see* Docket 24 at 21, ¶¶ 90-92; Docket 3-2 at 4.

[47] Docket 24 at 3, ¶ 8.

[48] Docket 24 at 20, ¶ 85.

[49] Docket 24 at 20, ¶ 86.

[50] Docket 24 at 29-31, ¶¶ 116-21.

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 10 of 25
Case 3:26-cv-00053-SLG    Document 45    Filed 03/16/26    Page 10 of 25

Amendment;[51] (3) a prior restraint in violation of the First Amendment;[52] (4) an unlawful seizure in violation of the Fourth Amendment;[53] (5) a procedural due process violation pursuant to the Fourteenth Amendment;[54] (6) an allegation of municipal liability pursuant to *Monell v. Dep't of Social Services*;[55] (7) a request for declaratory relief;[56] and (8) a violation of public meeting requirements under municipal and state law.[57]

As relief, Plaintiff seeks a declaration that "the trespass notice is unconstitutional," "Plaintiff has a constitutional right to attend Anchorage Assembly meetings and participate in public comment periods," "Defendants violated Plaintiffs clearly established First, Fourth, and Fourteenth Amendment rights on January 13 and January 27, 2026," Defendants "are not entitled to qualified immunity," "Allied Universal security guards acted under color of state law," "the public hearings on AO 2025-140 and the ballot measures approved January 27, 2026 were constitutionally defective," and the trespass notice and Plaintiff's

---

[51] Docket 24 at 31-32, ¶¶ 121-26.

[52] Docket 24 at 32-33, ¶¶ 127-31.

[53] Docket 24 at 33-34, ¶¶ 132-35.

[54] Docket 24 at 34-35, ¶¶ 136-39.

[55] Docket 24 at 35-36, ¶¶ 140-44 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

[56] Docket 24 at 36-37, ¶¶ 145-47.

[57] Docket 24 at 37-39, ¶¶ 148-53.

exclusion from the January 27, 2026 Assembly meeting violated municipal and state law.[58]

Plaintiff also seeks as relief "a preliminary and permanent injunction ordering Defendants to rescind the trespass notice, permit Plaintiff to attend all future Assembly meetings, and refrain from removing Plaintiff or any member of the public based on speech content or viewpoint."[59] He also asks the Court to order the Municipality to "conduct new public hearings on the ballot measures" and "to provide constitutional training to Assembly members, security guards, and APD officers."[60] Finally, Plaintiff seeks compensatory and punitive damages, as well as costs and interest.[61]

There are several pending motions in this case, including Plaintiff's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction.[62] The Court now turns to those motions.

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action includes a claim arising under federal law, 42 U.S.C. § 1983.

---

[58] Docket 24 at 39-40.

[59] Docket 24 at 40.

[60] Docket 24 at 40.

[61] Docket 24 at 40-41.

[62] Docket 19; Docket 21.

## I.      Temporary Restraining Order and Preliminary Injunction

The standard for obtaining a temporary restraining order is "substantially identical" to that for a preliminary injunction.[63]  In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[64]  When, as here, the government is a party to the action, the balance of equities factor and the public interest factor merge.[65]  The Supreme Court in *Winter* characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[66]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as part of the four-element *Winter* test."[67]  Under that approach, if a plaintiff shows "that there are 'serious

---

[63] *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[64] 555 U.S. 7, 20 (2008).

[65] *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

[66] *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

[67] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 13 of 25
Case 3:26-cv-00053-SLG     Document 45     Filed 03/16/26     Page 13 of 25

questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'"[68]  All four *Winter* elements must still be satisfied under this approach.[69]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[70]

## II.        Extension of Time to Respond

Federal Rule of Civil Procedure 6(b)(1) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

## DISCUSSION

## I.        Plaintiff's Motion for a Temporary Restraining Order and Amended Motion for an Emergency Preliminary Injunction

---

[68] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[69] *See All. for the Wild Rockies*, 632 F.3d at 1135 ("Of course, plaintiffs must also satisfy the other *Winter* factors."); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (describing standard for preliminary injunction).

[70] *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987).

Plaintiff moves for a temporary restraining order and preliminary injunction.[71] He maintains that "exigent circumstances require immediate relief" because "[t]he Municipality must mail ballots for the April 7, 2026 municipal election by approximately March 17, 2026," and "those ballots will include propositions approved at the January 13 and 27, 2026 Assembly meetings from which Plaintiff was unconstitutionally excluded."[72] He seeks an order staying "the printing and mailing of ballots containing propositions approved at the January 27, 2026 Assembly meeting and AO 2025-140" and directing "Defendants to permit Plaintiff and any member of the public to attend and testify at Anchorage Assembly meetings without content-based or viewpoint-based censorship."[73]

### a. Likelihood of Success on the Merits/Serious Questions

Plaintiff maintains that he is likely to succeed on the merits.[74] He contends that the video recording of the Assembly meeting shows that he was "speaking about LED lights during the Assembly's consideration of LED streetlight ordinances" when he was "interrupted based on the content of his speech" and "ordered removed."[75] He maintains that his removal violates the First Amendment,

---

[71] Docket 19; Docket 21.

[72] Docket 19 at 2; *see* Docket 21 at 4, 9.

[73] Dockey 19 at 2.

[74] Docket 19 at 3; *see Winter*, 555 U.S. at 20.

[75] Docket 19 at 3; *see* Docket 21 at 5-7.

Anchorage Municipal Charter § 17.05, Anchorage Municipal Code ("AMC") § 1.25.010, AMC § 2.30.030, and Alaska Statute § 44.62.310(a).[76]

### i. First Amendment Claim

Municipal Defendants respond that Plaintiff's "First Amendment claim lacks merit."[77] They maintain that "legislative bodies may enforce reasonable time, place, and manner restrictions—including requiring that public comments be germane to the legislative business at hand."[78] According to Municipal Defendants, "public bodies may confine their meetings to specified subject matter," and therefore "a legislative body does 'not violate the first amendment when it restricts public speakers to the subject at hand.'"[79]

The Court finds that Plaintiff is not likely to succeed, nor has he shown serious questions on the merits, on his claim that his removal from the January 13, 2026 Assembly meeting violated the First Amendment. Pursuant to the First Amendment, "limitations on speech at" " city council and city board meetings"

---

[76] Docket 19 at 4.

[77] Docket 31 at 12; *see* Docket 32 at 2 ("The Municipal Defendants oppose all of Mr. Darden's motions for preliminary injunctive relief, including his request for a TRO. Given the similarity of the motions, . . . Municipal Defendants hereby incorporate by reference their Preliminary Injunction opposition at Docket 31 and would refer the Court to those arguments in opposition to Mr. Darden's request for a TRO.").

[78] Docket 31 at 12.

[79] Docket 31 at 13 (first quoting *Madison Joint Sch. Dist. No. 8 v. Wisconsin Emp. Rels. Comm'n*, 429 U.S. 167, 175 n.8 (1976); and then quoting *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990)).

"must be reasonable and viewpoint neutral, but that is all they need to be."[80] "While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, it certainly may stop him if his speech becomes irrelevant or repetitious."[81]

The Court's review of the video shows that Plaintiff, after being warned several times that his testimony needed to be relevant to the ordinance being discussed, again failed to keep his testimony on topic. Specifically, the fourth ordinance for discussion when Plaintiff spoke was AO 2025-140, which would place a proposal to expand the tax service area for maintenance and operation of streetlights for a new subdivision in Eagle River on the April 7, 2026 ballot.[82] The ordinance does not mention LED lights or blue lights.[83] After Plaintiff spoke about LED and blue lights, Defendant Constant explained that the ordinance was about "a special light service area" and asked that Plaintiff "speak to the matter before [the Assembly]."[84] Plaintiff resumed testifying, but he did not testify further about LED lights or streetlights at all. Instead, he testified about his citizenship, recited a portion of the pledge of allegiance, cited the First Amendment, and stated that

---

[80] *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995).

[81] *White*, 900 F.2d at 1425 (internal citation omitted).

[82] Docket 31 at 8 (citing Docket 31-1).

[83] Docket 31-1.

[84] Video at 2:48:13-2:48:26.

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 17 of 25
Case 3:26-cv-00053-SLG   Document 45   Filed 03/16/26   Page 17 of 25

he was "just about done with the interruptions."[85] These topics are clearly not germane to AO 2025-140.

Further, Plaintiff had been given several warnings that he must limit his testimony to the matter then up for discussion before the Assembly. And there is no indication that Defendant Meyers objected to Plaintiff's speech because of Plaintiff's viewpoint; rather, Defendant Meyers believed that Plaintiff's testimony was not germane to the extension of the streetlight service area and Defendant Constant had Plaintiff removed for his repeated failure to testify on topic. As such, Defendant Constant's removal of Plaintiff from the January 13, 2026 Assembly meeting was reasonable and viewpoint neutral.

The Court therefore finds that Plaintiff has not shown a likelihood of success on the merits or that there are serious questions going to the merits on his First Amendment claim.[86]

### ii. Claims Under Anchorage and Alaska Law

Municipal Defendants contend that Plaintiff cannot show a likelihood of success on his claims under municipal and state law. Plaintiff raises a claim under Alaska Statute § 44.62.310(a)—the Open Meetings Act—and related municipal

---

[85] Video at 2:48:27-2:48:56.

[86] At this juncture, the Court does not assess Plaintiff's claims that a preliminary injunction is warranted based on Plaintiff's claim that his trespass from the January 27, 2026 Assembly meeting is an unconstitutional prior restraint or that his removal violated the Fourth Amendment. Docket 21 at 7-8. That is because, as explained below, Plaintiff cannot show that he will suffer irreparable harm absent a temporary restraining order or a preliminary injunction.

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 18 of 25
Case 3:26-cv-00053-SLG    Document 45    Filed 03/16/26    Page 18 of 25

charter and code provisions. "The purpose of the open meetings act is to assure that government units transact business openly."[87] As such, Alaska Statute § 44.62.310(a) requires that "All meetings of a governmental body of a public entity of the state are open to the public" except as otherwise provided and not relevant here. A "public entity" includes "an entity of . . . a political subdivision of the state including . . . a municipality."[88] Similarly, AMC § 1.25.010 provides generally that "[t]he policy of the municipality is that all meetings of the assembly . . . shall be open to the public" and that reasonable public notice shall be given for all meetings required to be public. AMC § 2.30.030 provides the date, time, and place for regular Assembly meetings and provides that the chair of the Assembly has the authority to make rulings and to promote the efficient and orderly conduct of Assembly business. This includes the authority to "order a person to be removed from a meeting for creating an actual disturbance to the meeting." Anchorage Municipal Charter § 17.05 similarly provides that "[a]ll meetings of the assembly . . . shall be public."

Plaintiff maintains that his removal from the January 13, 2026 Assembly meeting and his trespass and exclusion from the January 27, 2026 Assembly meeting violate these state and municipal laws.[89] Municipal Defendants maintain

---

[87] *Anchorage Sch. Dist. v. Anchorage Daily News*, 779 P.2d 1191, 1193 (Alaska 1989).

[88] Alaska Stat. § 44.62.310(h)(3).

[89] Docket 19 at 4-5; Docket 21 at 7.

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 19 of 25
Case 3:26-cv-00053-SLG    Document 45    Filed 03/16/26    Page 19 of 25

that Plaintiff's "personal ejectment from 1.5 meetings" "does not alter the fundamental character of the meeting as a public one" and therefore those meetings were not held in violation of the Open Meetings Act and related law.[90] Further, Municipal Defendants contend that Plaintiff "could still watch and listen to the meetings online, and he also had the option to submit written comments, which any person can do using a web form."[91]

The Court finds that Plaintiff has not shown a likelihood of success or that serious question go to the merits on his claim under the Open Meetings Act and related Anchorage municipal law. The January 13 and January 27, 2026 Assembly meetings were open to the public and, while Plaintiff was removed during the January 13, 2026 meeting and was not permitted to attend in person at the January 27, 2026 meeting, Plaintiff could still watch and listen to the meetings online and submit his written testimony if he wished to be heard on any of the matters considered by the Assembly. And, in any event, the Court agrees with Municipal Defendants that Plaintiff "makes no attempt to show that the statutory factors favor him or would allow the Court to make the required findings" in order to void the January 27, 2026 meeting.[92]

b. *Irreparable Harm*

---

[90] Docket 31 at 23.

[91] Docket 31 at 10.

[92] Docket 31 at 25; *see generally* Docket 34.

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 20 of 25
Case 3:26-cv-00053-SLG     Document 45     Filed 03/16/26     Page 20 of 25

Plaintiff contends that he will suffer irreparable harm absent a temporary restraining order or preliminary injunction because municipal ballots are being printed imminently and will include ballot measures that were approved at the January 13 and January 27, 2026 meetings.[93]  He also maintains that there will be irreparable harm without a court order because he "may face arbitrary exclusion if he returns" to an Assembly meeting and the Assembly has chilled the speech of others who might wish to speak on items before the Assembly.[94]

A plaintiff seeking preliminary injunctive relief must "demonstrate that irreparable harm is *likely* in the absence of an injunction."[95]  A mere possibility of irreparable harm is not sufficient."[96]  The Court agrees with Municipal Defendants that Plaintiff's assertion that he may be excluded from further Assembly meetings and that others will have their speech chilled because of Defendants' conduct towards him is, at most, a mere possibility of harm.  Plaintiff does not allege that he has now been trespassed from attending Assembly meetings and his assertion that his speech and the speech of others may be chilled is speculative.

Therefore, the Court finds that in addition to failing to show a likelihood of success on the merits or that serious questions go to the merits on his First

---

[93] Docket 19 at 5; Docket 21 at 9.

[94] Docket 19 at 5-6; Docket 21 at 8-9.

[95] *Winter*, 555 U.S. at 375 (emphasis in original).

[96] *Id.*

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 21 of 25
Case 3:26-cv-00053-SLG    Document 45    Filed 03/16/26    Page 21 of 25

Amendment and Open Meeting Act claims, Plaintiff has not shown that he will suffer irreparable injury absent a temporary restraining order or a preliminary injunction as to any of the claims raised in his motion for a temporary restraining order or a preliminary injunction.

### c. Balance of the Equities/Public Interest

In light of the foregoing findings—that Plaintiff has failed to show a likelihood of success on the merits or that he faces irreparable harm—the Court need not and does not address the final *Winter* factors.

In sum, Plaintiff's Motion for a Temporary Restraining Order at Docket 19 and Amended Motion for Preliminary Injunction at Docket 21 are DENIED.

### II.      Plaintiff's Motion for Expedited Consideration

Because this order denies Plaintiff's Motion for a Temporary Restraining Order and Amended Motion for Preliminary Injunction, the Court DENIES as moot Plaintiff's Motion for Expedited Consideration for Emergency Motion for Preliminary Injunction at Docket 22.

### III.      Municipal Defendants' Motion for Extension of Time

Federal Rule of Civil Procedure 6(b)(1) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Plaintiff's Amended Complaint was docketed by this Court

on February 18, 2026.[97]  Pursuant to Federal Rule of Civil Procedure 15(a)(3), Municipal Defendants' response to Plaintiff's Amended Complaint was due 14 days after Plaintiff filed his Amended Complaint, March 4, 2026.

On March 9, 2026, Municipal Defendants move for an extension of time to respond to Plaintiff's Amended Complaint to March 24, 2026.[98]  Municipal Defendants seek an extension because "lead counsel, who was tasked with taking lead on the response to the complaint, then experienced, in very quick succession, the death of her father, illness, and an immovable out-of-state family travel obligation."[99]  Further, amid these personal events, Municipal Defendants miscalendared the deadline for their response as March 10, 2026; and hence, filed their motion for an extension after the deadline for their answer had expired.[100]

Municipal Defendants maintain that they have shown good cause exists to grant the extension due to their excusable neglect because Plaintiff will not be prejudiced by the extension as Plaintiff's motions for a temporary restraining order and preliminary injunction are fully briefed, "[t]he length of the just-over-4-day delay in filing the extension motion at issue here, and the requested extension . . . is modest," there is no indication that "the calendaring mistake here was the result of

---

[97] Docket 24.

[98] Docket 38 at 1.

[99] Docket 44 at 3 (citing Docket 38-1 at 2-3).

[100] Docket 44 at 3 (citing Docket 38-1 at 3).

bad faith, strategic gamesmanship, or intentional delay," and "a brief, good faith calendaring error made during lead counsel's extenuating personal circumstances, resulting in no prejudice to the other side, is plainly excusable under binding precedent."[101]

The Court finds that good cause exists to grant Municipal Defendants' motion for an extension of time. Considering the modest length of the requested extension, counsel's difficult personal circumstances, the lack of intentional tardiness, and the Municipal Defendants' timely response to Plaintiff's emergency motions, good cause exists to extend the deadline for Municipal Defendants to respond to Plaintiff's Amended Complaint until March 24, 2026. Municipal Defendants' Motion for Extension of Time . . . in Which to Respond to Amended Complaint at Docket 38 is **GRANTED**.

Because Municipal Defendants' response to Plaintiff's Amended Complaint is now due by March 24, 2026, Plaintiff's Motion for Entry of Default at Docket 39 is **DENIED**.

### CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED:

---

[101] Docket 44 at 5-7 ("'Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused," as here, "by inadvertence, mistake, or carelessness.'") (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993))).

1. Municipal Defendants' Motion for Extension of Time to Respond to Preliminary Injunction Motion at Docket 18 is **DENIED** as moot. *See* Docket 43.

2. Plaintiff's Motion for a Temporary Restraining Order at Docket 19 is **DENIED**.

3. Plaintiff's Amended Emergency Motion for a Preliminary Injunction at Docket 21 is **DENIED**.

4. Plaintiff's Motion for Expedited Consideration for Emergency Motion for Preliminary Injunction at Docket 22 is **DENIED** as moot.

5. Municipal Defendants' Motion for 14-Day Extension of Time in Which to Respond to Amended Complaint at Docket 38 is **GRANTED**. Municipal Defendants shall respond to Plaintiff's Amended Complaint by **March 24, 2026**.

6. Plaintiff's Request for Entry of Default Against Municipal Defendants Pursuant to Fed. R. Civ. P. 55(a) at Docket 39 is **DENIED**.

DATED this 16th day of March, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:26-cv-00053-SLG, *Darden v. LaFrance, et al.*
Order on All Pending Motions
Page 25 of 25
Case 3:26-cv-00053-SLG     Document 45     Filed 03/16/26     Page 25 of 25